UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ryan et al,<br><br>                          Plaintiffs,<br><br>v.<br><br>County of Imperial et al,<br><br>                         Defendants. | Case No.: 21cv1076-JO-KSC<br><br>**ORDER GRANTING MEDIA DEFENDANTS' ANTI-SLAPP MOTION TO STRIKE** |

      Plaintiffs Gilda and Joseph Ryan filed a wide-ranging complaint alleging state and federal claims against Defendants Yuma Sun Incorporated, Uriel Avendano, and Lisa Reilly (collectively, "Media Defendants") as well as numerous other defendants. Media Defendants filed a motion to strike Plaintiffs' state law claims for violations of the Unruh Act and defamation pursuant to California's anti-SLAPP statute. Dkt. 87.[1] For the reasons

---

[1] Media Defendants concurrently filed a motion to dismiss for failure to state a claim. Dkt. 88. The Court has issued a separate order on their motion to dismiss.

discussed below, Media Defendants' motion to strike is GRANTED as to Plaintiffs' state law claims.

## I.  BACKGROUND

Plaintiffs are residents of Imperial County who attended a Palo Verde Water District Board meeting on May 17, 2018, and an Imperial County Board of Supervisors meeting on June 4, 2019. Their claims arise from the events which unfolded during these meetings.

The first incident took place at a Palo Verde Water District Board meeting on May 17, 2018 (the "May 2018 Meeting"). That morning, Plaintiffs attended the meeting with their two-year-old child and voiced their water concerns to the Board members. FAC ¶ 1. According to Plaintiffs, the exchange became increasingly heated and culminated in Board member Jess Preston throwing a crumpled piece of paper at Mr. Ryan, screaming insults, threatening to "unilaterally seize" Plaintiffs' child, and trying to physically attack Mr. Ryan. FAC ¶¶ 2–3. Following Mr. Preston's attempted attack, Plaintiffs allege that Mr. Preston conspired with Water District Board members and employees to deny that Mr. Preston did anything more than throw a piece of paper at Mr. Ryan. FAC ¶ 4. Plaintiffs further allege that various Imperial County law enforcement, counsel, and employees joined a conspiracy to cover up Mr. Preston's actions by "coach[ing], advis[ing], approv[ing], and provid[ing] illegal aid and support" to the Board members and employees. FAC ¶ 5.

The second incident occurred during a County Board of Supervisors meeting on June 4, 2019 (the "June 2019 Meeting"). Plaintiffs formally requested to speak at the Board meeting regarding the May 2018 Meeting and the Board granted their request. During the Board meeting's public comment period, Ms. Ryan took the podium to speak. Following Ms. Ryan's remarks, individuals in the crowd allegedly "started yelling a steady stream of insults and epitaphs" and made "loud, gratuitous" noises, which "had a negating effect upon the ability of [Ms. Ryan] to be heard." FAC ¶ 16. Board Supervisor Ryan Kelley announced that Plaintiffs were breaking the board meeting rules. *See* FAC ¶ 16. Law

enforcement officers Rene McNish and other unidentified officers then publicly escorted Plaintiffs out of the board meeting and "blocked [them] in the street." FAC ¶ 18.

Plaintiffs allege that news reporter Uriel Avendano attended the June 2019 Board meeting and wrote a news article about this meeting for the Palo Verde Valley Times (a local newspaper owned by Defendant Yuma Sun Incorporated). *See* FAC ¶¶ 30, 42–43; Dkt. 87-2 (Ex. A to RJN). Based on this attendance and newspaper article about the meeting, Plaintiffs allege that Media Defendants "agreed to adopt and embrace the goals of the conspiracy" with government officials to ruin Plaintiffs' reputations and deny them their constitutional rights. *Id.* Plaintiffs allege that Media Defendants "deliberately assisted" the government officials "with perpetuating a false narrative about what happened" during the June 2019 Board meeting, "in order to intentionally and purposefully tar [Plaintiffs] with a badge of infamy, and to discredit their speech by harming Plaintiffs' reputations." FAC § E.

Plaintiffs initiated this action on June 4, 2021 against Media Defendants and various other government officials, law enforcement, and private citizens who attended the June 2019 Meeting. On September 14, 2021, Plaintiffs filed their First Amended Complaint which alleges the following claims against the Media Defendants: 42 U.S.C. § 1983 claims, Unruh Act claims, and defamation. Dkt. 9 (FAC). Media Defendants filed a motion to strike the Unruh Act and defamation claims pursuant to California's anti-SLAPP statute, and a motion to dismiss all claims, state and federal, for failure to state a claim. Dkts. 87, 88.[2] This Order addresses only Media Defendants' motion to strike.

## II.   LEGAL STANDARD

California's anti-Strategic Lawsuit Against Public Participation ("anti-SLAPP") statute provides an efficient way to dispose of lawsuits filed for the purpose of silencing free speech rights. This statute permits defendants to bring a "special motion to strike" a

---

[2] The Court has ruled on Media Defendants' motion to dismiss in a separate order issued on the same date as this order.

plaintiff's state law claims arising from certain protected conduct. Cal. Code Civ. Proc. § 425.16(b)(1); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003). In federal court, a defendant may bring this anti-SLAPP special motion to strike supplemental state law claims. *See In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1272 (9th Cir. 2013).

In evaluating an anti-SLAPP motion, the district court conducts a two-part inquiry. "First, a defendant must make an initial *prima facie* showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech." *Vess*, 317 F.3d at 1110. Second, once the defendant has made a *prima facie* showing, the burden shifts to the plaintiff "to establish a reasonable probability that it will prevail on its claim in order for that claim to survive dismissal." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013). Where, as here, an anti-SLAPP motion challenges the legal sufficiency of a complaint, the district court applies the Federal Rule 12(b)(6) standard and considers whether a claim is properly stated. *Planned Parenthood Federation of America, Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). Accordingly, under the Federal Rule 12(b)(6) standard, a plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A plaintiff must plead facts, as opposed to conclusory allegations or the "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. If the plaintiff fails to satisfy the Federal Rule 12(b)(6) pleading standard, the court must strike the causes of action and award the moving defendants their attorneys' fees. *Planned Parenthood Federation of America, Inc.*, 890 F.3d at 834; Cal. Civ. Code §§ 425.16(b)(1), (b)(2), (c)(1).

### III.   DISCUSSION

Media Defendants argue that Plaintiffs' state law claims must be stricken pursuant to the anti-SLAPP statute because (1) the claims arise from the protected conduct of news reporting on a public government meeting and (2) Plaintiffs have not shown a reasonable

probability of prevailing on each of these claims. Plaintiffs argue that the anti-SLAPP motion is not timely. The Court examines each of these three arguments below.

A.   **Request for Judicial Notice**

Prior to addressing the arguments, the Court first examines Media Defendants' request for judicial notice. Media Defendants filed a request for judicial notice of the news article at issue written and published by Media Defendants. Dkt. 87-1 (Ex. A to RJN). A court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also* Fed. R. Evid. 201. A document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908. A court can also take judicial notice of facts that are not subject to reasonable dispute because they are either generally known or can be readily determined by reference to sources whose accuracy cannot be reasonably questioned. Fed. R. Evid. 201(b). Here, Plaintiffs base their claims against Media Defendants on the news article. The Court concludes that it is appropriate to deem the news article incorporated into Plaintiffs' complaint. Accordingly, the Court denies Media Defendants' request for judicial notice as moot but will consider the news article as incorporated into the pleading as necessary.

B.   **Media Defendants' Anti-SLAPP Motion to Strike is Timely**

The Court next examines whether Media Defendants' anti-SLAPP motion is timely. Plaintiffs argue that Media Defendants' motion is untimely because they filed it over sixty days after Plaintiffs served their initial complaint. Section 425.16(f) provides that an anti-SLAPP motion "may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper." Cal. Civ. Proc. Code § 425.16(f). The Ninth Circuit has held, however, that California's timing provision does not apply in federal court because it is a procedural device that may conflict directly with

the Federal Rules. *See Sarver v. Chartier*, 813 F.3d 891, 900 (9th Cir. 2016). Here, the Court granted Plaintiffs' and Media Defendants' stipulated joint motion to extend time to answer or otherwise respond to the complaint to November 29, 2021. Dkt. 64. Pursuant to the Court order granting the stipulated joint motion, Media Defendants filed their anti-SLAPP motion to strike and motion to dismiss on November 29, 2021. The Court, therefore, finds that Media Defendants' anti-SLAPP motion was timely filed.

**C.    Plaintiffs' Claims Against Media Defendants Arise from the Protected Activity of News Reporting on a Public Government Meeting**

Having determined that the motion is timely, the Court now turns to the first step inquiry of whether Plaintiffs' causes of action against Media Defendants arise from protected conduct. In order to prevail on an anti-SLAPP motion, the defendant must show that the plaintiff's suit arises from the defendant's "protected conduct" made in connection with "a public issue in furtherance of the defendant's free speech rights." *Hilton v. Hallmark Cards*, 599 F.3d 894, 901, 903 (9th Cir. 2010). The anti-SLAPP statute provides categories of such "protected conduct," including writings made in connection with "an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law," or "made in a place open to the public or in a public forum in connection with an issue of public interest." Cal. Civ. Proc. Code §§ 425.16(e)(2), (e)(3). This protected conduct covers newspaper articles concerning local government board meetings, *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.*, 37 Cal. App. 4th 855, 863 (1995), and extends to all news reporting generally. *Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 887 (9th Cir. 2016) (finding that publishing an article on a topic of public interest "easily" constituted protected conduct in public forum on issue of public interest).

Here, Plaintiffs base their claims against Media Defendants on allegations that Mr. Avendano attended the June 2019 Board meeting and published a newspaper article summarizing the events of the meeting. FAC ¶¶ 42–43; *see also* RJN, Ex. A. Plaintiffs' claims therefore arise out of a journalist's reporting on a public government meeting.

*Lafayette Morehouse, Inc.*, 37 Cal. App. 4th at 863.  Accordingly, the Court finds that Media Defendants have carried their burden to make a *prima facie* showing that Plaintiffs' causes of action against Media Defendants arise from protected conduct.

**D.    Plaintiffs Have Not Demonstrated a Probability of Prevailing on the Claims**

Having concluded that the claims against Media Defendants are based on protected conduct, the Court must now determine whether Plaintiffs can show a reasonable probability of prevailing on their claims by satisfying the Federal Rule 12(b)(6) standard. Construing Plaintiffs' complaint liberally, Plaintiffs appear to bring state claims for (1) Unruh Act violations and (2) defamation against Media Defendants based on their conduct.

The Court first examines whether Plaintiffs have sufficiently pled their Unruh Act claim and, thus, demonstrated a probability of prevailing on the claim.  The Unruh Civil Rights Act prohibits a "business establishment" from discriminating against any person based on "their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation." Cal. Civ. Code § 51. The Unruh Act imposes liability only on business establishments. *Brennon B. v. Sup. Ct. of Sup. Ct. of Contra Costa Cty.*, 57 Cal. App. 5th 367, 369 (Cal. Ct. App. 2020).  To state a claim under the Unruh Act, a plaintiff must show "(1) they were denied full and equal services; (2) a substantial motivating reason for defendants' conduct was an actionable characteristic; (3) plaintiffs were harmed; and (4) defendants' conduct was a substantial factor in causing plaintiff's harm." Jud. Council of Cal. Civil Jury Instructions, CACI No. 3060 (Unruh Civil Rights Act—Essential Factual Elements) (2021); *see also* Cal. Civ. Code § 51(b).  Intentional discrimination is required for violations of the Unruh Act. *Harris v. Capital Growth Invs. XIV*, 52 Cal. 3d 1142, 1149 (1991), *superseded by statute on other grounds as stated in Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 664–65 (2009).

Here, Plaintiffs provide no specific factual allegations against Media Defendants to support the required elements of an Unruh Act claim.  Plaintiffs merely allege that their Unruh Act claims rest on "the same set of facts" that support their federal civil rights claims, but do not plead any additional facts to support the elements of an Unruh claim.

FAC § J. For example, Plaintiffs fail to allege that Media Defendants discriminated against them due to a protected characteristic, or that this discrimination was intentional. After construing the complaint liberally and in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have failed to satisfy their Rule 12(b)(6) requirement to allege facts that support a claim for relief under the Unruh Act. Thus, by the same token, Plaintiffs fail to meet their burden to establish they will prevail on the merits of their Unruh Act claims against Media Defendants.

The Court next examines whether Plaintiffs have demonstrated a reasonable probability of prevailing on their defamation claim. Defamation "involves the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage." *Gilbert v. Sykes*, 147 Cal. App. 4th 13 (quoting *Ringler Assocs. Inc. v. Md. Cas. Co.*, 80 Cal. App. 4th 1165 (2000)). Under California law, the statute of limitations for a defamation action is one year. Cal. Civ. Code § 340(c). A defamation action based on a statement in a newspaper accrues when the "newspaper is first generally distributed to the public." *Hebrew Academy of San Francisco v. Goldman*, 42 Cal. 4th 883, 891 (2007). In this case, the Palo Verde Valley Times published Mr. Avendano's news article on June 12, 2019. Ex. A to RJN. Plaintiffs did not bring a defamation action until nearly two years later, when they filed their initial complaint on June 4, 2021. Dkt. 1. For this reason, the statute of limitations bars Plaintiffs' defamation claim. Plaintiffs have thus failed to meet their burden to establish they will prevail on the merits of their defamation claims against Media Defendants.

Based on Plaintiffs' allegations, the Court concludes that the state claims must be stricken without leave to amend. A district court properly grants an anti-SLAPP motion and dismisses the suit with prejudice without leave to amend where "amendment would have been futile." *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1161 (9th Cir. 2021). Moreover, the purpose of the anti-SLAPP statute is "the expeditious weeding out of meritless claims before trial." *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 971 (9th Cir. 1999). Here, Plaintiffs' amendment of the complaint would be

futile to save their stricken claims.  First, amendment cannot cure the fact that the statute of limitations bars Plaintiffs' defamation claims as a matter of law.  Second, Plaintiffs cannot allege facts to plausibly show how the Yuma Sun Incorporated publishing a news article describing the events of a local government meeting constitutes intentional discrimination based on an actionable characteristic.  Accordingly, the claims are stricken without leave to amend.

## IV.   CONCLUSION

For the reasons discussed above, the Court GRANTS Media Defendants' motion [Dkt. 87] to strike Plaintiffs' Unruh Act and defamation claims pursuant to Cal. Code. Civ. Proc. § 425.16.  Because the Court grants the motion to strike, Media Defendants may file a motion for attorneys' fees and costs.  *See* Cal. Civ. Proc. Code § 425.16(c)(1) (if the movant prevails on a special motion to strike, it is "entitled to recover [its] attorney's fees and costs").

**IT IS SO ORDERED.**

Dated:  September 29, 2022

_____
Honorable Jinsook Ohta
United States District Judge