UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

Gilda Ryan et al.,

Plaintiffs,

v.

County of Imperial et al,

Defendants.

Case No.:  21cv1076-JO-KSC

**ORDER GRANTING MOTIONS TO DISMISS**

Plaintiffs Gilda and Joseph Ryan filed a civil rights action under 42 U.S.C. § 1983, against the County of Imperial; the Palo Verde County Water District (a sub-agency of County of Imperial); various individuals associated with these entities in their official and individual capacities; private citizens who attended an Imperial County Board of Supervisor's meeting; and a local newspaper and associated employees who published a news article about the Board meeting.

Defendants County of Imperial ("County") and its officials and employees Blanca Acosta, Raymond Castillo, Esperanza Colio-Warren, Adam Crook, Clifton Erro, Jesus Escobar, Michael Kelley, Ryan Kelley, Raymond Loera, Rene McNish, Fred Miramontes, Luis Plancarte, Tony Rouhotas, Jr., and Katherine Turner ("Individual County Defendants") (collectively, "Imperial County Defendants") filed a motion to dismiss for

1

failure to state a claim.[1]  Dkt. 67.  Defendants Patsy Calvert, Thomas Calvert, and Anne Marie Delcastillo, private citizens who were present at the same Imperial County Board of Supervisors meeting that Plaintiffs attended (collectively, "Private Defendants"), filed a motion to dismiss for failure to state a claim.  Dkt. 101.  Defendants Yuma Sun Incorporated, Uriel Avendano, and Lisa Reilly, the newspaper and employees who published a news article about the Imperial County Board of Supervisors meeting (collectively, "Media Defendants"), filed a motion to dismiss for failure to state a claim. Dkt. 88.[2]  For the reasons discussed below, the Court GRANTS the defendants' motions to dismiss.

## I.    BACKGROUND

Plaintiffs are residents of Imperial County who attended a Palo Verde Water District Board meeting on May 17, 2018, and an Imperial County Board of Supervisors meeting on June 4, 2019.  Their claims arise from the events which unfolded during these meetings.

The first incident took place at a Palo Verde Water District Board meeting on May 17, 2018 (the "May 2018 Meeting").  That morning, Plaintiffs attended the meeting with their two-year-old child and voiced their water concerns to the Board members.  FAC ¶ 1.  According to Plaintiffs, the exchange became increasingly heated and culminated in Board member Jess Preston throwing a crumpled piece of paper at Mr. Ryan, screaming insults, threatening to "unilaterally seize" Plaintiffs' child, and trying to physically attack Mr. Ryan.  FAC ¶¶ 2–3.  Following Mr. Preston's attempted attack, Plaintiffs allege that Mr. Preston conspired with Palo Verde County Water District Board members and employees David Ayala, Ronald Woods, David Khoury, Barbara Hopton, and Kathy Frice-Sanders ("Water District Defendants") to deny that Mr. Preston did anything more than throw a piece of paper at Mr. Ryan.  FAC ¶ 4.  Plaintiffs further allege that various Imperial

---

[1] Defendant Gilbert Otero filed a notice of joinder in Imperial County Defendants' motion to dismiss. Dkt. 97.

[2] Media Defendants also filed a concurrent anti-SLAPP motion to strike the state claims against them. Dkt. 87.  The Court has concurrently issued a separate order on the anti-SLAPP motion.

County law enforcement, counsel, and employees—specifically, County Supervisor Raymond Castillo, County Sheriff Raymond Loera, Undersheriff Fred Miramontes, County Counsel Katherine Turner, assistant County Counsel Adam Crook, and County Vice CEO Esperanza Colio-Warren—joined a conspiracy to cover up Mr. Preston's actions by "coach[ing], advis[ing], approv[ing], and provid[ing] illegal aid and support" to the Board members and employees.  FAC ¶ 5.

The second incident occurred during a County Board of Supervisors meeting on June 4, 2019 (the "June 2019 Meeting").  Plaintiffs formally requested to speak at the Board meeting, and the Board granted their request.  Plaintiffs intended to speak about Mr. Preston's alleged attempt to "seize" Plaintiffs' child during the May 2018 Meeting. FAC ¶ 11.  During the Board meeting's public comment period, Ms. Ryan took the podium to speak.  FAC ¶ 15.  Based on the video recording of this event, Ms. Ryan began her remarks with the comment, "You know, we had a problem in here, right?  We had a problem in here when-- on May 17, we had a meeting in there.  Your member, Mr. Preston, he came-- he came for this little girl to kidnap her--" while gesturing to the young girl with her.  *See* RJN, Ex. B (56:08–56:30).  This personal charge against the Board member caused audience members to start making inaudible comments.  At this point, Mr. Ryan began shouting and pointing toward people in the audience.  While the contents of his comments are largely unintelligible, Mr. Ryan can be heard repeating the word "kidnapping" in the video recording.  *Id.* at 56:39.

In their complaint, Mr. and Ms. Ryan describe the aftermath of their comments as follows: Private Defendants and others in the crowd "started yelling a steady stream of insults and epitaphs" and made "loud, gratuitous" noises, which "had a negating effect upon the ability of [Ms. Ryan] to be heard."  FAC ¶ 16.  Board Supervisor Ryan Kelley announced that Plaintiffs broke the Board meeting rules and admonished Plaintiffs that this public meeting is not the appropriate forum for charges of this nature.  *See* FAC p. 25; Ex. A to FAC at 89; RJN, Ex. B (56:44–57:04).  Law enforcement officers Rene McNish and other unidentified officers then publicly escorted Plaintiffs out of the Board meeting and

3

"blocked [them] in the street."  FAC ¶ 18.  After these events occurred, Plaintiffs allege that Imperial County Defendants conspired together to "use a software program to remove some specific audio tracks" from the official video recording of the June 2019 Meeting in order to "obscure noise made by [Mr. Preston's wife]," while leaving the rest of the video "unaffected."  FAC ¶ 40.

Plaintiffs further allege that Media Defendants published a defamatory newspaper article about them to ruin their reputation and that they did this in concert with other defendants.  Plaintiffs allege that news reporter, Uriel Avendano, attended the Board meeting and wrote a news article for the Palo Verde Valley Times (a local newspaper owned by Defendant Yuma Sun Incorporated).  *See* FAC ¶¶ 30, 42–43.  By reporting on the events of the Board meeting, Media Defendants "deliberately assisted" the government officials "with perpetuating a false narrative about what happened," "in order to intentionally and purposefully tar [Plaintiffs] with a badge of infamy, and to discredit their speech by harming Plaintiffs' reputations."  FAC § E.  Plaintiffs further allege that Media Defendants "agreed to adopt and embrace the goals of the conspiracy" with government officials to ruin Plaintiffs' reputations and deny them their constitutional rights.  *Id.*

Based on the above events, Plaintiffs assert a wide-ranging conspiracy by (1) the Palo Verde County Water District and its Board members and employees; (2) the County and its officials and employees; (3) County law enforcement officials; (4) private citizens who attended the June 2019 meeting; and (5) Media Defendants to separate Plaintiffs from their child, deny Plaintiffs their constitutional right to speak at a local government Board meeting, and publicly destroy their reputations.

Plaintiffs filed their initial complaint on June 4, 2021, and the operative amended complaint on September 14, 2021, alleging eighty-one "counts" under section 1983 for numerous constitutional violations under the First, Fourth, and Fourteenth Amendments.

*See* Dkt. 9 (FAC) at pp. 24–28[3].  Based on the same conduct, Plaintiffs also allege state law claims for defamation and violation of California's Unruh Civil Rights Act.  *Id.*  Plaintiffs concurrently filed a document challenging the County Board meeting rule governing the June 2019 Board meeting as unconstitutional and seeking injunctive and declaratory relief.  Dkt. 9-1.

## II.   LEGAL STANDARD

A motion to dismiss under Federal Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001).  A court must accept all factual allegations pleaded in the complaint as true and draw all reasonable inferences from them in favor of the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).  However, a court need not accept conclusory allegations as true, but "examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff."  *Holden v. Hagopian*, 978 F.2d 115, 1121 (9th Cir. 1992).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To avoid a Rule 12(b)(6) dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 545.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  Plausibility requires pleading facts, as opposed to

---

[3] The paragraphs in the FAC are not consistently numbered and so the Court cites to the page number where necessary.

conclusory allegations, which rise above the mere conceivability or possibility of unlawful conduct. *Twombly*, 550 U.S. at 555.

Although *pro se* pleadings are construed liberally to determine whether a claim has been stated, *see Zichko v. Idaho*, 247 F.3d 1015, 1020 (9th Cir. 2001), a plaintiff must still present factual and non-conclusory allegations to state a claim. *Twombly*, 550 U.S. at 555; *Hebbe v. Pliler*, 627 F.3d 338, 341–41 (9th Cir. 2010). A *pro se* plaintiff still "must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." *Jones v. Cmty. Redev. Agency of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984).

When a complaint fails to state a claim as set forth above, a plaintiff may seek leave to amend to cure its deficiencies. Federal Rule 15(a) provides that a district court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). In deciding whether to grant leave to amend, the court considers the following factors: the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of the proposed amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).

A district court has discretion to deny leave to amend when a proposed amendment would be futile. *Chappel v. Lab. Corp. of America*, 232 F.3d 719, 725–26 (9th Cir. 2000). Amendment is futile "if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). Thus, leave to amend should be denied where "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *New v. Armour Pharm. Co.*, 67 F.3d 716, 722 (9th Cir. 1995); *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 297 (9th Cir. 1990) (amended complaint may not contradict prior pleadings). Repeated failure to cure deficiencies by amendment previously allowed is also a reason to deny leave to amend. *Foman*, 371 U.S. at 182. "[W]hen a district court has already granted a plaintiff leave to amend, its discretion in deciding

6

subsequent motions to amend is particularly broad." *Chodos v. West Publishing Co.*, 292 F.3d 992, 1003 (9th Cir. 2002).

## III.   DISCUSSION

Imperial County Defendants, Private Defendants, and Media Defendants move to dismiss on various grounds, including that (1) the statute of limitations bars Plaintiffs' claims arising from the May 2018 Meeting; (2) Plaintiffs fail to allege that Private Defendants or Media Defendants engaged in state action as required for a § 1983 claim; (3) Plaintiffs fail to state a § 1983 claim against the County; and (4) qualified immunity shields Individual County Defendants from Plaintiffs' § 1983 claims.   The Court will address each of these arguments in turn.

**A. Requests for Judicial Notice**

Prior to addressing the arguments, the Court first examines the parties' requests for judicial notice.   First, Plaintiffs filed a request for judicial notice of Imperial County's Rules for the Conduct of Board Meetings (the "Rules for Conduct").   Dkt. 9-1; *see* https://board.imperialcounty.org/wpcontent/uploads/2019/09/BOSRules.pdf.   Second, Plaintiffs and Media Defendants both filed a request for judicial notice of an official video excerpt of the June 2019 Meeting ("June 2019 Video").   Dkt. 9; Dkt. 88-1 (RJN, Ex. B).

A court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice— without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also* Fed. R. Evid. 201.   A court may take judicial notice of matters that are "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."   Fed. R. Evid. 201(b).   Materials that may be judicially noticed include "the undisputed and publicly available information displayed on government websites." *King v. Cty. of Los Angeles*, 885 F.3d 548, 555 (9th Cir. 2018); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (taking judicial notice of any facts not subject to reasonable dispute).

Here, the Board of Supervisor's Rules for Conduct and the June 2019 Video are public records available on Imperial County's Board of Supervisors website, and, therefore, are not subject to reasonable dispute. *See, e.g., Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 (9th Cir. 2006) (affirming judicial notice of documents on government's official website because their accuracy cannot reasonably be questioned). Plaintiffs dispute a specific portion of the June 2019 Video's audio, alleging that an unidentified person "remove[d] some specific audio tracks" from the video in order to "obscure noise made by [Mr. Preston's wife]." FAC ¶ 40. They admit in their pleading, however, that the rest of the recording is "unaffected." FAC ¶ 40. As Plaintiffs do not otherwise dispute the contents of the June 2019 Video, the Court takes judicial notice of the events as captured in the undisputed portions of the June 2019 Video. *Lee*, 250 F.3d at 689. The Court also grants Plaintiff's request for judicial notice of the Board of Supervisor's Rules for Conduct.

## B. The Statute of Limitations Bars Plaintiffs' Claims Arising from the May 2018 Meeting

Based on the events that occurred during the May 17, 2018, meeting, Plaintiffs allege that all defendants conspired together to violate their Fourteenth Amendment right not to be separated from their children without due process. *See Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Campbell v. Burt*, 141 F.3d 927 (9th Cir. 1998). Before turning to the substance of these claims, the Court first examines whether the statute of limitations bars Plaintiffs' § 1983 claims arising from the May 17, 2018, Water Board meeting.

For claims under section 1983, the applicable limitations period is the state law limitations period for personal injury actions. *Wallace v. Kato*, 549 U.S. 384, 387–88 (2007); *Lucchesi v. Bar-O Boys Ranch*, 353 F.3d 691, 694 (9th Cir. 2003). Because the California statute of limitations for personal injury actions is two years, Cal. Code. Civ. Proc. § 335.1, the statute of limitations for a § 1983 claim arising in California is two years. *See Wallace*, 549 U.S. at 397. When "'the running of the statute is apparent on the face of the complaint,'" "a claim may be dismissed under Rule 12(b)(6) on the ground that it is

8

barred by the applicable statute of limitations." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)).

Here, the Court concludes that the statute of limitations bars Plaintiffs' Fourteenth Amendment and other claims arising from the May 2018 Meeting. These claims arise from the incident on May 17, 2018, where Water District Board member Mr. Preston allegedly threatened to "unilaterally seize" Plaintiffs' child, and other Board members and County employees conspired to cover up Mr. Preston's conduct. FAC ¶ 3. Plaintiffs filed the initial complaint on June 4, 2021, over two years after the May 2018 incident occurred. Plaintiffs appear to argue that the statute of limitations began to run on June 4, 2019, because this conspiracy was finalized and carried out during the June 2019 Meeting. Dkt. 106 (Opposition) at 22–23. However, Plaintiff's First Amended Complaint contains no factual allegations regarding how the May 2018 threat to seize their child came to fruition during the June 4, 2019, County Board of Supervisors meeting. Plaintiffs similarly fail to allege facts connecting the conspiracy to cover up Mr. Preston's conduct during the May 2018 meeting to being denied the right speak at the June 2019 Meeting. Thus, after construing the First Amended Complaint liberally and in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs fail to allege facts that would plausibly establish that the May 2018 incident was part of a larger conspiracy that culminated in the wrongs they suffered at the June 2019 Meeting. The Fourteenth Amendment and related conspiracy claims arising from the May 2018 Meeting alleged against all the defendants are therefore barred by the statute of limitations. Accordingly, the Court dismisses these claims. The Court also dismisses from the case the following defendants who are associated only with the May 2018 incident: the Palo Verde Water District, Kathi Frice-Sanders, Barbara Hopton, Donna Lord, and County Vice CEO Esperanza Colio-Warren.

The Court dismisses the above claims and defendants with prejudice because amendment is futile to cure the statute of limitations bar. Given the unrelated nature of the allegations arising from the May 2018 Meeting and the June 2019 Meeting, Plaintiffs could

1  not plead facts plausibly showing a connection between the two separate incidents and

2  establishing that the two events were part of the same conspiracy. *Miller*, 845 F.2d at 214

3  (amendment is futile "if no set of facts can be proved under the amendment to the pleadings

4  that would constitute a valid and sufficient claim").

## C. Plaintiffs Fail to Allege State Action to State a Section 1983 Claim Against Private Defendants and Media Defendants

7       Plaintiffs allege that Private Defendants, in violation of section 1983, conspired with

8  County government officials and law enforcement to deny their rights at the June 2019

9  Board meeting by making loud noises while Ms. Ryan spoke. FAC ¶ 16. Plaintiffs also

10 allege that Media Defendants conspired with County government officials to deny their

11 constitutional rights by publishing the news article on the June 2019 Meeting. FAC ¶ 43.

12 Private Defendants and Media Defendants argue that Plaintiffs cannot show they acted

13 under the color of state law as required to state a § 1983 claim.

14      To state a claim under section 1983, a plaintiff must "(1) allege the violation of a

15 right secured by the Constitution and laws of the United States; and (2) show that the

16 alleged deprivation was committed by a person acting under the color of state law." *Naffe*

17 *v. Frey*, 789 F.3d 1030, 1035–36 (9th Cir. 2015) (internal quotations omitted). Courts

18 presume that private conduct does not constitute action under the color of state law. *See*

19 *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999). However,

20 § 1983 actions "can lie against a private party when 'he is a willful participant in joint

21 action with the State or its agents.'" *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003)

22 (quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)). "One way the 'joint action' test is

23 satisfied is if a 'conspiracy' is shown." *Howerton v. Gabica*, 708 F.2d 380, 383 (9th Cir.

24 1983). In other words, "[a] private party may be considered to have acted under color of

25 state law when it engages in a conspiracy or acts in concert with state agents to deprive

26 one's constitutional rights." *Fonda v. Gray*, 707 F.2d 435, 437 (9th Cir. 1983).

27      Alleging a viable § 1983 claim against private parties, however, takes more than just

28 conclusory allegations of a conspiracy. *Woodrum v. Woodward County*, 866 F.2d 1121,

21cv1076-JO-KSC

1126 (9th Cir. 1989). Instead, a plaintiff must show (1) an agreement between the defendants to deprive the plaintiff of a constitutional right, (2) an overt act in furtherance of the conspiracy, and (3) a constitutional violation. *See Gilbrook v. City of Westminster*, 177 F.3d 839, 856–57 (9th Cir. 1999). A plaintiff must allege an "'agreement or meeting of the minds' to violate constitutional rights" between a private party and the government. *Fonda*, 707 F.2d at 438 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). "To be liable as a co-conspirator, a private defendant must share with the public entity the goal of violating a plaintiff's constitutional rights" and demonstrate a "substantial degree of cooperation" with the government to violate those rights. *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002).

The Court first examines Plaintiffs' claims against Private Defendants. Because Private Defendants are three private citizens who attended the June 2019 Board meeting, the Court examines whether Plaintiffs sufficiently allege that Private Defendants conspired or acted jointly with a state actor. Plaintiffs merely allege that Private Defendants attended the June 2019 Board meeting and acted as a "mob of noisemakers" in the audience by yelling insults. FAC ¶¶ 16, 33. Plaintiffs include conclusory allegations that Private Defendants were part of a conspiracy with state actors but allege no facts to support the inference that a meeting of the minds or substantial cooperation occurred between Private Defendants and government officials. FAC ¶¶ 21, 28. Because Plaintiffs fail to provide factual, non-conclusory allegations against Private Defendants that support a conspiracy or joint action with a state actor, the Court dismisses the § 1983 claims against Private Defendants. *Twombly*, 550 U.S. at 555.

The Court now turns to Plaintiffs' claims against Media Defendants. Similarly, the Court examines whether Plaintiffs have sufficiently alleged that Media Defendants—a private local newspaper and private employees—conspired or acted jointly with a state actor. Plaintiffs base their conspiracy allegations solely on Mr. Avendano's presence at the June 2019 Board meeting and the newspaper article that he published. FAC ¶ 43. Plaintiffs provide no additional factual allegations to support the existence of an agreement

to violate constitutional rights between Media Defendants and a state actor or substantial cooperation between them. *Twombly*, 550 U.S. at 555 (plausibility requires pleading facts, as opposed to conclusory allegations). The only other allegations regarding Media Defendants are conclusory in nature. *See e.g.*, FAC ¶ 30 (alleging Media Defendants "knowingly agreed to embrace and adopt the goals of the conspiracy described"). Plaintiffs thus fail to allege sufficient facts to support a conspiracy or joint action between Media Defendants and a state actor, as required to state a § 1983 claim. After construing the complaint liberally and in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have failed to allege the requisite state action to state a § 1983 claim against Media Defendants.

The Court dismisses these § 1983 claims against Private Defendants and Media Defendants with prejudice because amendment would be futile. The entirety of Plaintiffs' allegations against Private Defendants who attended the June 2019 Meeting consists of complaints about their noisemaking and yelling insults. Given that the crux of Plaintiffs' grievance against Private Defendants is their loud and heckling behavior during Ms. Ryan's comments, Plaintiffs could not plausibly allege facts to establish a meeting of the minds and substantial cooperation with a state actor required to state a § 1983 claim against private actors. As to Media Defendants, the entirety of Plaintiffs' allegations is that Mr. Avendano attended the June 2019 Meeting and wrote a news article published by a local newspaper. Because Plaintiffs' complaints against Media Defendants rest solely on the publication of the newspaper article about them, Plaintiffs could not amend to plausibly allege facts establishing the requisite meeting of the minds and substantial cooperation between Media Defendants and a state actor to state a § 1983 claim against these private actors. Granting leave to amend would thus be futile. *Miller*, 845 F.2d at 214.

## D. Plaintiffs Fail to Allege a *Monell* Claim against the County and Individual County Defendants in their Official Capacities

Plaintiffs allege § 1983 claims against the County of Imperial and various County officials and employees in their official capacities. Because Plaintiffs do not adequately

plead a *Monell* claim against these defendants, the Court dismisses their claims against them.

Municipalities and officials sued solely in their official capacities may not be held vicariously liable under section 1983 for the unconstitutional acts of its employees under the theory of *respondeat superior*. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978); *Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir. 1995). Instead, a county is liable only when it maintains a policy or custom that causes the deprivation of a plaintiff's federally protected rights. *Monell*, 436 U.S. at 690. To prevail on a *Monell* claim, a plaintiff must show that defendants expressly adopted an official policy, longstanding practice, or custom that was the "moving force" behind his injuries. *Id.* at 694. To establish an official policy that would give rise to *Monell* liability, a plaintiff must allege facts to support one of the following: (1) an unconstitutional custom or policy behind the violation of rights; (2) a deliberately indifferent omission, such as a failure to train or failure to have a needed policy; or (3) a final policy-maker's involvement in, or ratification of, the conduct underlying the violation of rights. *Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1249–50 (9th Cir. 2010), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).

Here, Plaintiffs appear to base their section 1983 municipal and official capacity claims against these defendants on either (1) the actions of various County officials and employees; or (2) on the County's Rules for Conduct as the unlawful policy underpinning their *Monell* claim. If the former, Plaintiffs' § 1983 claims against the County and official-capacity defendants fail because they cannot be directly liable for actions of County employees under a *respondeat superior* theory. *Monell*, 436 U.S. at 690, 691 n.55. If, however, Plaintiffs intended to bring a *Monell* claim based on the County Rules for Conduct, the Court will examine whether Plaintiffs have alleged that these rules were the unconstitutional policy behind the violation of their rights. *Clouthier*, 591 F.3d at 1249–50.

It is well established that rules placing reasonable restrictions on speech during government meetings are constitutional. A government board meeting is a limited public forum. *Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266, 270 (9th Cir. 1995). A government entity can regulate a limited public forum by placing reasonable restrictions on the time, place, and manner of speech. *Id.* As long as the regulations are "viewpoint neutral and enforced that way," the regulations can even restrict the content of speech. *Norse v. City of Santa Cruz*, 629 F.3d 966, 975 (9th Cir. 2010). In *White v. City of Norwalk*, the Ninth Circuit upheld the constitutionality of a council meeting's rule of decorum proscribing conduct that disturbs "the orderly conduct of any Council meeting" and allowing the presiding officer to use her discretion to bar the disrupting individual "from further audience before the Council during that meeting." 900 F.2d 1421, 1424 (9th Cir. 1990). The court reasoned that the rule of decorum sought to further the government's legitimate interest in conducting orderly and efficient council meetings by prohibiting actual disruptive comments and behavior. *Id.* at 1425.

Upon review of the County's Rules for Conduct, it appears that these rules are constitutional because their restrictions promote the orderly conduct of the Board meetings in a viewpoint neutral manner. Imperial County's Rules for Conduct provide that "[i]n the event that any meeting of the Board is willfully interrupted or disrupted by a person or by a group or groups of persons so as to render the orderly conduct of the meeting unfeasible, the Chairperson may recess the meeting or order the person, group or groups of persons willfully interrupting the meeting to leave the meeting or be removed from the meeting, or in appropriate circumstances, order the meeting room cleared and continue in session." County of Imperial Board of Supervisors Rules for the Conduct of Board Meetings, Section II(D)(3), https://board.imperialcounty.org/wp-content/uploads/2019/09/BOSRules.pdf. Like the meeting rules of decorum in *White*, the Court finds that the Rules for Conduct governing the Board meetings are constitutional. Because the Rules for Conduct proscribe conduct that renders an orderly meeting infeasible and permits the removal of individuals who have disrupted the meeting, these rules further the County's legitimate interests in

conducting an efficient and orderly Board meeting.  Moreover, the Rules for Conduct are viewpoint neutral because they do not restrict the position that a speaker may take on any issue; instead, they simply prohibit disruptive conduct and provide a mechanism for removing from meetings the individuals who have created a disruption.  Accordingly, the Court finds that Plaintiffs have failed to plead the unconstitutionality of the policy underpinning their *Monell* claim.  For these reasons, the Court dismisses Plaintiffs' *Monell* claim against the County and official-capacity defendants based on the County's Rules for Conduct without prejudice.

Plaintiffs also concurrently filed a document characterized as a facial and as-applied constitutional challenge to the Rules for Conduct seeking declaratory and injunctive relief. Dkt. 9-1.  A plaintiff must bring a § 1983 claim against the appropriate entity for a facial and as-applied constitutional challenge to a County ordinance or rule.  *See, e.g.*, *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1054 (9th Cir. 2002) (providing that section 1983 is the method for vindicating constitutional violations including challenges to ordinances).  Plaintiffs have failed to do so here.  Accordingly, the Court also dismisses Plaintiffs' facial and as-applied constitutional challenge to the Board of Supervisors' Rules for Conduct without prejudice.

### E. Qualified Immunity Bars Plaintiffs' § 1983 Claims Against County Officials in their Individual Capacities

Plaintiffs also brought § 1983 claims against the members of the County Board of Supervisors and various County law enforcement officials and employees in their individual capacities ("Individual County Defendants") for removing them from the June 2019 Meeting.  Plaintiffs allege that by removing them from the public meeting, these defendants violated the following constitutional rights: (1) Fourteenth Amendment right to speak, associate, assemble, and petition the government, (2) Fourteenth Amendment right to be free from detention and to movement, (3) Fourteenth Amendment right under the state-created danger doctrine, (4) Fourteenth Amendment right to a liberty interest in their reputation not being stigmatized, and (5) Fourteenth Amendment right to be free from

discriminatory denial of speech rights, police, and prosecution services.  Individual County Defendants argue that they removed Plaintiffs from the Board meeting according to the County's Rules for Conduct; qualified immunity, therefore, shields them from § 1983 liability because they did not violate a clearly established constitutional right.

Qualified immunity shields government officials from personal liability for civil damages unless their conduct "violated a clearly established constitutional right." *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1151 (9th Cir. 2022) (quoting *Monzon v. City of Murrieta*, 978 F.3d 1150, 1156 (9th Cir. 2020)).  To determine whether an official is entitled to qualified immunity, the court examines "(1) whether the official's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the events at issue." *Id.* (internal quotation marks omitted).  A court must determine whether the plaintiff has alleged the deprivation of a clearly established right such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  Because officers have the right to assume that an ordinance or rule is constitutional, they are entitled to qualified immunity when their "allegedly unconstitutional action" was simply to enforce "an ordinance which was duly enacted" by the government.  *Acosta v. City of Costa Mesa*, 718 F.3d 800, 823–824 (9th Cir. 2013) (citing *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994)).  It would not be clear to a reasonable officer that his conduct was unlawful if a statute or ordinance authorized such conduct.  *Grossman*, 33 F.3d at 1209.

Here, the Court examines Plaintiffs' allegations and the judicially noticed June 2019 Video to determine whether Defendants simply enforced the County's Rules for Conduct in ejecting Plaintiffs from the meeting.  If so, they are entitled to qualified immunity.

As set forth above, the County's Rules for Conduct for its local government meetings provide that if any meeting is disrupted, the Chairperson may order the removal of the people causing the disruption.  Here, it appears from Plaintiffs' allegations and the judicially noticed June 2019 Video that Plaintiffs did indeed cause a disruption at the June 2019 Board of Supervisors Meeting.  Ms. Ryan took the podium and made the accusation

that Board member Jess Preston tried to "kidnap" her daughter.  RJN, Ex. B (56:08–56:30).  This caused an immediate hubbub among the audience members.  *Id*. at 56:31.  Mr. Ryan then followed up with pointing at and directing comments to various audience members; while his comments are largely inaudible, the Court could discern the word "kidnapping." *Id.* at 56:39.

Plaintiffs' own allegations demonstrate that Individual County Defendants acted pursuant to the County's Rules for Conduct in halting Ms. Ryan's speech and removing Plaintiffs once a disruption ensued.  As provided for in the Rules, Board Supervisor Ryan Kelley halted Plaintiffs' speech and announced that Plaintiffs broke the Board meeting rules.  FAC p. 26.  (According to the June 2019 Video, Mr. Kelley appears to admonish Plaintiffs that this meeting was not the appropriate place to make a charge of this nature.  RJN, Ex. B at 56:40.)  Subsequently, law enforcement officers Rene McNish and other unidentified officers removed Plaintiffs from the meeting.  *See* FAC ¶¶ 16–18; p. 26.  Based on the above, the Court finds that Individual County Defendants are thus entitled to qualified immunity because they were following the County's Rules for Conduct to remove persons who cause a disruption in the Board meeting.  *See* FAC ¶ 15; *Grossman*, 33 F.3d at 1209.  Given these duly enacted rules, reasonable public officials would not have known that it was unlawful to remove Plaintiffs from the Board meeting after their conduct sparked loud noises and shouting by the crowd.  FAC ¶ 16; *White*, 900 F.2d at 1425–26.  Accordingly, the § 1983 claims against Individual County Defendants are dismissed on grounds of qualified immunity.

The Court dismisses these claims with prejudice because amendment would be futile.  The judicially noticed June 2019 Video shows that Mr. and Ms. Ryan's conduct during the public comment period caused an actual disruption at the Board meeting and Individual County Defendants removed them from the meeting as a result of the disruption.  RJN, Ex. B.  The occurrences depicted in the June 2019 Video are consistent with the allegations in Plaintiffs' complaint.  Thus, the Court concludes that Plaintiffs could not

plausibly plead facts consistent with the complaint and the June 2019 Video to cure the deficiencies. *Armour Pharm. Co.*, 67 F.3d at 722.

**F. Plaintiffs Fail to State an Unruh Act Claim**

Finally, Plaintiffs allege an Unruh Act, Cal. Civ. Code § 51, claim against all defendants.[4]  Plaintiffs allege no additional facts to support this claim and proceed instead "on the same set of facts" that "depend upon proving the same elements" as their § 1983 claims.  FAC § J, p. 28.

The Unruh Civil Rights Act prohibits a "business establishment" from discriminating against any person based on "their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation."  Cal. Civ. Code § 51.  The Unruh Act imposes liability only on business establishments.  *Brennon B. v. Sup. Ct. of Sup. Ct. of Contra Costa Cty.*, 57 Cal. App. 5th 367, 369 (Cal. Ct. App. 2020).  An entity qualifies as a business establishment for purposes of the Unruh Act when it "appears to have been operating in a capacity that is the functional equivalent of a commercial enterprise."  *Warfield v. Peninsula Golf & Country Club*, 10 Cal. 4th 594, 622 (1995).   Although government entities may constitute "business establishments," courts have declined to impose liability under the Unruh Act when the alleged wrongful acts did not relate to a business function.  *Harrison v. City of Rancho Mirage*, 243 Cal. App. 4th 162, 173 (2015) (holding the city did not act as "business establishment" when engaging in legislative function); *Romstad v. Contra Costa Cnty.*, 41 Fed. Appx. 43, 46 (9th Cir. 2002) (concluding that county social services department does not qualify as "business establishment").

Here, Plaintiffs have alleged no facts to support an essential element of their Unruh Act claim—that defendants were acting as a business establishment.   In particular,

---

[4] The Court addresses the Unruh Act and defamation claim against Media Defendants in the Court's separate order on their anti-SLAPP (under California's Strategic Lawsuit Against Public Participation statute) motion to strike.

18

Plaintiffs fail to allege facts to show that the County, the Water District, the Board of Supervisors, and their associated officials and employees were acting as a commercial enterprise, rather than engaging in public service, when conducting or attending the Board meetings at issue. *See Cooley v. City of Los Angeles*, 2019 WL 3766554, at \*6 (C.D. Cal. Aug. 5, 2019) (dismissing Unruh Act claim against city because Plaintiffs failed to show that allegedly unlawful activity are a "business-like activity" as opposed to "a public service"). Plaintiffs also do not allege facts showing how Private Defendants, private citizens attending a local government meeting, are acting as a commercial enterprise. Accordingly, the Court dismisses Plaintiffs' Unruh Act claims against Imperial County Defendants and Private Defendants. The Court dismisses these claims with prejudice because Plaintiffs could not plausibly allege facts to show that the County and its government officials conducting a public Board meeting, and private individuals attending such meeting, are operating as a commercial enterprise to constitute a business establishment.

## IV.   CONCLUSION

For the reasons discussed above, the Court hereby orders the following:

- Imperial County Defendants' motion to dismiss [**Dkt. 67**] is GRANTED and the claims against them are DISMISSED. The Court dismisses the § 1983 claims against the County without prejudice and dismisses the § 1983 claims against the Individual County Defendants with prejudice. The Court dismisses the Unruh Act claims with prejudice.

- Private Defendants' motion to dismiss [**Dkt. 101**] is GRANTED and the section 1983 and Unruh Act claims against them are DISMISSED with prejudice.

//
//
//
//

21cv1076-JO-KSC

1
2

- Media Defendants' motion to dismiss [**Dkt. 88**] is GRANTED with respect to the § 1983 claims and the § 1983 claims are DISMISSED with prejudice.

3

4      **IT IS SO ORDERED.**

5   Dated:  September 29, 2022

6
7
8
_____
Honorable Jinsook Ohta
United States District Judge

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

21cv1076-JO-KSC